IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES WASHINGTON,                :    CIVIL ACTION
                                 :    NO. 10-2869
          Petitioner,            :
                                 :
     v.                          :
                                 :
JEFFREY BEARD, et al.,           :
                                 :
          Respondents.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 6, 2012


          James Washington ("Petitioner") is a prisoner at State
Correctional Institution Rockview. Petitioner filed an
application for a writ of habeas corpus pursuant to 28 U.S.C. §
2254 ("Habeas Petition") challenging his custody. U.S.
Magistrate Judge Strawbridge recommended denial of the Habeas
Petition and Petitioner raised eleven objections. For the
reasons that follow, the Court will sustain Petitioner's
objection regarding denial of his Confrontation Clause rights
and issue a conditional writ of habeas corpus to free Petitioner
from custody unless he is retried by the Commonwealth within 120
days.

I.    **BACKGROUND**

Petitioner is currently serving two consecutive life sentences and a concurrent term of ten to twenty years of imprisonment based on convictions for second-degree murder, robbery, and criminal conspiracy. Report & Recommendation 2, ECF No. 15 [hereinafter "R&R"]. The convictions stem from the robbery and murder of two employees of a Dollar Express store in Philadelphia, Pennsylvania, on February 24, 2000. Id. at 1. Petitioner, Willie Johnson, Romont Waddy, and James Taylor conspired to commit the robbery. Id. at 2. Taylor, a former employee of the store, conceived of the plan to commit the robbery based on his knowledge of the store and its operations. Id. Petitioner, the only conspirator with access to a vehicle, would drive. Id. When the conspirators executed the plan, Johnson, who carried a firearm, murdered the two employees with single shots to the head. Id. Thereafter, Taylor learned that he became a person of interest in the murder, subsequently surrendered, and provided a statement to the police. Id. He entered into a plea agreement whereby he agreed to testify against his co-conspirators in exchange for a sentence of imprisonment not more than 55 to 110 years. Id.

Petitioner, Johnson, and Waddy were tried together in the Philadelphia Court of Common Pleas before the Honorable Steven R. Geroff. Id. The Commonwealth sought the death penalty

against Johnson. <u>Id.</u> On the fifth day of jury selection, Waddy's counsel, joined by counsel for co-defendants, objected that the prosecutor employed peremptory challenges in a racially discriminatory manner. <u>Id.</u> at 3. On the record, Judge Geroff allowed the prosecutor, Judith Rubino, Esquire, to explain her rejection of eleven Africa-American venire persons. <u>Id.</u> After concluding that the prosecutor did not engage in race-based jury selection, the court proceeded with jury selection.[1] <u>Id.</u>

On November 5, 2001, the jury found Petitioner guilty of two counts of second-degree murder, two counts of robbery, and one count of criminal conspiracy. <u>Id.</u> On July 31, 2003, the Pennsylvania Superior Court affirmed his convictions. <u>Commonwealth v. Washington</u>, 832 A.2d 545 (Pa. Super. Ct. 2003) (table). And on March 16, 2004, the Pennsylvania Supreme Court denied Petitioner's direct appeal. <u>Commonwealth v. Washington</u>, 847 A.2d 1285 (Pa. 2004) (table).

On January 24, 2005, Petitioner collaterally attacked his convictions under the Pennsylvania Post Conviction Relief Act ("PCRA"). The PCRA court denied Petitioner's PCRA petition. <u>Commonwealth v. Washington</u>, No. CP-51-CR-1003091-2000, slip op. at 1 (Pa. Ct. Com. Pl. June 9, 2008). The Pennsylvania Superior

---

[1]     Ultimately, the jury consisted of eight Caucasians and four African-Americans. Three alternates were white and one alternate was Africa-American. R&R 3.

Court affirmed. Commonwealth v. Washington, 981 A.2d 938 (Pa. Super. Ct. 2009) (table). And on May 18, 2010, the Pennsylvania Supreme Court denied his appeal. Commonwealth v. Washington, 995 A.2d 353 (Pa. 2010) (table).

On June 10, 2010, Petitioner filed the instant Habeas Petition that raises claims of ineffective assistance and constructive denial of counsel and claims that various trial court decisions violated his constitutional rights. Habeas Pet. 11. The Court referred the matter to Magistrate Judge Strawbridge for a report and recommendation. Judge Strawbridge issued a fifty-page report recommending denial of the Habeas Petition on the merits. Petitioner timely objected. Pet'r's Objections 1, ECF No. 18. And the matter is now ripe for disposition.[2]

## II. LEGAL STANDARD

The Court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. Section 2254 R. 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."); see also 28 U.S.C. § 636(b)(1)(B) (2006 & Supp. IV 2011). A prisoner may object to

---

[2]    The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254.

the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Therefore, the Court will conduct a de novo review of those portions of the Report and Recommendation to which Petitioner objects.

On habeas review, the Court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d) (2006).

## III. DISCUSSION

Petitioner raises eleven objections to the Report and Recommendation. For the following reasons, the Court will sustain objection ten, which relates to Petitioner's confrontation rights, and issue a conditional writ of habeas corpus on that ground. For the sake of completeness, the Court considers and overrules Petitioner's remaining objections.

### A.   Co-Defendant's Redacted Statement

In his tenth objection, Petitioner argues the state trial court violated his confrontation rights under the Sixth Amendment.[3] On direct appeal, the Pennsylvania Superior Court rejected Petitioner's claim that the trial court violated his rights under the Confrontation Clause by allowing a witness to read from parts of codefendant Waddy's redacted confession. Commonwealth v. Washington, No. 723 EDA 2002, slip op. 4-5 (Pa. Super. Ct. July 31, 2003). Names and nicknames in the statement were replaced with words such as "the other guy" and "the driver" before a witness read from the statement in response to questions. R&R 47. And before the witness read parts of the

---

[3]      In his tenth objection, Petitioner also objects to other alleged trial court errors including claims based on the sufficiency of the evidence and denial of a requested jury instruction. The Court will overrule Petitioner's tenth objection to the extent it relies on these grounds. See infra note 7.

statement to the jury, Judge Geroff instructed the jury that the
evidence relates only to defendant Waddy and not any other
defendant. Trial Tr. vol. 1, 58:7-19, Nov. 1, 2001.

Judge Strawbridge determined that the Pennsylvania
Superior Court's decision was not contrary to, or an
unreasonable application of, federal law. Judge Strawbridge
noted that codefendant Waddy's statement was not subject to the
requirements of the Confrontation Clause because codefendant
Waddy did not testify against Petitioner, either in person or
through an admitted statement. R&R 49. Although Taylor
identified Petitioner as "the driver" at trial, only by
inference could Waddy's redacted statement refer to Petitioner.
Moreover, Taylor was subject to extensive cross-examination.
Therefore, Judge Strawbridge determined that Petitioner had no
right under the Confrontation Clause to cross-examine
codefendant Waddy regarding the redacted statement. Id.

Upon de novo review of Judge Strawbridge's Report and
Recommendation, the Court holds that Petitioner was deprived of
his rights under the Confrontation Clause when the trial court
allowed a witness to read from codefendant Waddy's redacted
statement. "In all criminal prosecutions, the accused shall
enjoy the right . . . to be confronted with the witnesses
against him." U.S. Const. amend. VI. Because the right of
confrontation includes the right to cross-examine adverse

7

witnesses, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." Richardson v. Marsh, 481 U.S. 200, 206 (1987).

Generally, witness testimony in a joint trial is not "against" a defendant when the trial court instructs the jury not to consider the testimony against that defendant. See id. This is so because the court presumes that "the jury can and will follow the trial judge's instructions to disregard such information." Bruton v. United States, 391 U.S. 123, 135 (1968). "Nevertheless, . . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. Thus, in Bruton, the Court held that a defendant is deprived of his right to confront witnesses against him when a nontestifying codefendant's confession, which facially incriminates the defendant, is introduced at trial, regardless of whether the trial court delivers a limiting instruction. Id. at 135-36.

Following Bruton, the Supreme Court considered whether the exception laid out in Bruton extended to a nontestifying codefendant's confession introduced at trial that was "redacted to omit all reference to respondent——indeed, to omit all

indication that <u>anyone</u> other than [the codefendants]
participated in the crime." <u>Richardson</u>, 481 U.S. at 203. In
<u>Richardson</u>, the trial court also instructed the jury not to
consider the confession against the defendant. The Court noted
that in <u>Bruton</u>, "the codefendant's confession 'expressly
implicat[ed]' the defendant as his accomplice." <u>Id.</u> at 208
(quoting <u>Bruton</u>, 391 U.S. at 124 n.1). "By contrast, in this
case the confession was not incriminating on its face, and
became so only when linked with evidence introduced later at
trial (the defendant's own testimony)." <u>Id.</u> The Court explained
that the jurors would be more likely to obey a limiting
instruction where further evidence linking the codefendant's
confession to defendant was necessary. <u>Id.</u> Thus, the <u>Richardson</u>
Court held, "the Confrontation Clause is not violated by the
admission of a nontestifying codefendant's confession with a
proper limiting instruction when as here, the confession is
redacted to eliminate not only the defendant's name, but any
reference to his or her existence." <u>Id.</u> at 211. Importantly, the
Court reserved the question of whether "a confession in which
the defendant's name has been replaced with a symbol or neutral
pronoun" would suffice. <u>Id.</u> at 211 n.5.

In <u>Gray v. Maryland</u>, 523 U.S. 185 (1998), the Court
took up just that issue. There the Court considered whether a
defendant's rights under the Confrontation Clause were violated

9

where "the prosecution . . . redacted the codefendant's confession by substituting for the defendant's name in the confession a blank space or the word 'deleted.'" Gray, 523 U.S. at 188. After the trial court judge ordered the codefendant's confession to be redacted, a witness read the confession into evidence, saying the word "deleted" or "deletion" where defendant's name appeared. The trial court judge also gave a limiting instruction. The Gray Court expressed concern that jurors would react to the redacted confession at issue similarly as if the confession was not redacted at all. Id. at 193. That is, the blank space or deletion will alert jurors, who will easily discover that the blank or deletion previously referred to a codefendant. Id. Furthermore, "[b]y encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation." Id. Finally, the Court noted that typical Bruton statements have the same "powerfully incriminating effect" as the redacted statement at issue because the grammatical consistency makes both "directly accusatory." Id. at 194.

Thus, the Court held,

Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result.

10

Id. at 192. The Court finally noted that the inference
connecting the confession and the defendant is not the "critical
difference" between a Bruton violation and permissible, redacted
testimony. Id. at 195. In fact, the distinction in Richardson
relied on "the kind of, not the simple fact of, inference." Id.
at 196.

> We concede that Richardson placed outside the scope of
> Bruton's rule those statements that incriminate
> inferentially. We also concede that the jury must use
> inference to connect the statement in this redacted
> confession with the defendant. But inference pure and
> simple cannot make the critical difference, for if it
> did, then Richardson would also place outside Bruton's
> scope confessions that use shortened first names,
> nicknames, descriptions as unique as the 'red-haired,
> bearded, one-eyed man-with-a-limp,' and perhaps even
> full names of defendants who are always known by a
> nickname. This Court has assumed, however, that
> nicknames and specific descriptions fall inside, not
> outside, Bruton's protection.

Id. at 195 (citations omitted).

    The Pennsylvania Superior Court's denial of
Petitioner's Bruton claim was an unreasonable application of
federal law as established by the U.S. Supreme Court. The
Pennsylvania Superior Court noted that the "[Pennsylvania]
Supreme Court explained, relying on Richardson v. Marsh, 481
U.S. 200 (1987), and Gray v. Maryland, 523 U.S. 185 (1998), that
the Bruton rule was limited to those 'co-defendant confessions
that expressly incriminate the defendant,' as opposed to those
that 'become incriminating only when linked to other evidence

11

properly introduced at trial.'" <u>Commonwealth v. Washington</u>, No.
723 EDA 2002, slip op. 5 (Pa. Super. Ct. July 31, 2003) (quoting
<u>Commonwealth v. Travers</u>, 768 A.2d 845 (Pa. 2001)).[4] This is a
misstatement of clearly established federal law as determined by
the U.S. Supreme Court. Indeed, in <u>Gray</u>, the Court held that the
<u>Bruton</u> rule was not limited to circumstances where a
nontestifying co-defendant's confession expressly incriminates a
defendant. Indeed, the redacted confession in <u>Gray</u> was
constitutionally infirm even though all express references to
the defendant were deleted. Furthermore, the Pennsylvania
Superior Court's reliance on a bright-line rule that a
nontestifying codefendant's confession is admissible, with a
limiting instruction, so long as there is no express reference
to the defendant, is contrary to <u>Gray</u>'s instruction to look to
the kind, not the fact, of an evidentiary inference.

---

[4]      The Pennsylvania Superior Court read <u>Travers</u> too
broadly. That is, in <u>Travers</u>, the Pennsylvania Supreme Court
held that replacing a defendant's name in a nontestifying
codefendant's confession with "the other man" did not offend the
defendant's confrontation rights under federal law. <u>Travers</u>, 768
A.2d at 850-51. The <u>Travers</u> court did not hold, as the
Pennsylvania Superior Court held in this matter, that admission
of a redacted nontestifying codefendant's confession does not
run afoul of the Sixth Amendment so long as the confession
requires some evidentiary linkage or inference to become
incriminating against the defendant. In any event, this Court,
on habeas review, must determine whether the Pennsylvania
Superior Court's decision was an unreasonable application of
federal law, as determined by the U.S. Supreme Court at the time
of the relevant state court decision. <u>See</u> 28 U.S.C. § 2254(d)(1)
(2006); <u>Greene v. Palakovich</u>, 606 F.3d 85, 99 (3d Cir. 2010).

Here, Waddy's confession was not "redacted to omit all reference to [Petitioner]——indeed, to omit all indication that <u>anyone</u> other than [the other codefendants] participated in the crime." <u>Richardson</u>, 481 U.S. at 203 (emphasis in original). The trial judge explained the redaction of Waddy's statement as follows:

> Prior to the introduction of the statement of Romont Waddy given to police on March 5, 2000, C-1, all counsel and the court reviewed it in detail. The trial judge redacted the statement. During the trial, Detective John Cummings read the redacted statement in response to questions from the prosecutor. The jury was never shown either the original or the redacted statement. The names and nicknames of all of the defendants in the case were deleted. The names and nicknames were replaced with words such as 'someone I know,' 'the other guy,' the driver,' 'the guy who went into the store,' and 'the shooter." There were no references to defendants James Washington and Willie Johnson by name or nickname, and there were no blanks in the statement in the form in which it was read in open court.

<u>Commonwealth v. Washington</u>, No. 10-309, slip op. 12-13 (Pa. Ct. Com. Pl. Sept. 26, 2002). Petitioner's counsel objected to the redacted statement's references to "the driver," and suggested the phrase be replaced with "a guy or another guy or some guy or something to that effect." Trial Tr. vol. 5, 6-9, Oct. 29, 2001. The trial court overruled the objection. <u>Id.</u> at 8-9. Detective Cummings then read from the redacted statement using the phrase "the driver" in place of Petitioner's name or nickname. <u>Id.</u> at 59-85.

13

Petitioner's existence, although not by name, and even his role in the conspiracy, remained in the redacted statement in the form of "the driver." Previously, the jury heard Taylor's testimony placing Petitioner as the driver of the getaway vehicle used in the commission of the crime. Furthermore, although the redacted statement is not necessarily incriminating absent the inference, grounded in Taylor's testimony, that Petitioner is "the driver," the kind of inference required here presents an unacceptable risk that the jury considered Waddy's confession as evidence of Petitioner's guilt.[5] See Gray, 523 U.S. at 195-96.

Under these circumstances, the Pennsylvania Superior Court's holding that Waddy's confession was not barred under

---

[5]     Moreover, the jury could have deduced from Waddy's confession that "the driver" was Petitioner. Waddy's confession referred to four individuals: Waddy, Taylor, and two others. Waddy was tried with two co-defendants, Petitioner and Johnson. And unlike Petitioner, who was charged with second-degree murder, Johnson was on trial for first-degree murder because, it was alleged, he entered the store and shot the victims. Taylor was tried separately. The jury could have quickly deduced that Petitioner, who was charged with a lesser crime than Johnson, was "the driver" who waited in the car during the robbery and murders. Therefore, the risk that the jury would consider Waddy's confession as evidence of Petitioner's guilt was so great that even a limiting instruction could not cure the constitutional defect. Compare Greene v. Palakovich, 606 F.3d 85, 106 (3d Cir. 2010) (rejecting Confrontation Clause challenge when substitutions in redacted confession "yielded confusing statements that failed to establish either the number of persons involved or, except for the shooter, the role that each person played in committing the offense").

Bruton because the confession did not incriminate Petitioner absent inference was an unreasonable application of federal law.[6]

That the Pennsylvania Superior Court's decision was an unreasonable application of federal law does not end the analysis. Next, the Court must determine whether introduction of a nontestifying codefendant's confession was harmless error or resulted in "actual prejudice" to Petitioner. See Adamson v. Cathel, 633 F.3d 248, 259 (3d Cir. 2011).

> An error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict. If an error did have that kind of effect, then, by definition, it resulted in actual prejudice. Our role is to ask whether we think the constitutional error substantially influenced the jury's decision. If, when all is said and done, the court's conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. But if we have grave doubt about whether the error had substantial and injurious effect or influence in determining the jury's verdict, we must conclude that the error was not harmless.

---

[6]     Although Pennsylvania Superior Court's decision is judged in terms of federal law as pronounced by the U.S. Supreme Court, the Court is guided by Third Circuit opinions to have considered this issue, which opinions confirm the result reached here. See Pabon v. Mahanoy, 654 F.3d 385, 397 (3d Cir. 2011) (finding Petitioner's Confrontation Claim decided under Pennsylvania Supreme Court's bright-line approach to substitute "pronoun for a name" plus limiting instruction to avoid Bruton issue is unreasonable application of federal law); Vazquez v. Wilson, 550 F.3d 270, 281-82 (3d Cir. 2008) (criticizing reliance on Travers to create bright-line rule that use of term like "the other guy" will always satisfy Bruton).

Id. at 259-60 (alterations omitted) (citations omitted) (internal quotation marks omitted).

Given the paucity of evidence placing Petitioner at the scene of the crime, consisting solely of Taylor's identification of Petitioner as the driver of the getaway vehicle, the Court cannot conclude that Waddy's confession did not have a substantial and injurious effect on the jury's verdict against Petitioner. The Commonwealth's case against Petitioner relied on Taylor's testimony. As recognized by Judge Geroff in his charge to the jury, Taylor's testimony presented a serious credibility issue. Taylor abused drugs and provided prior inconsistent statements regarding the robbery and murders. Furthermore, his credibility was questionable because he was an integral party to the conspiracy and may have been motivated to twist the story to his benefit or the benefit of other conspirators. Trial Tr. vol. 1, 121:17-125:16, Nov. 1, 2001. He was, as the prosecutor recognized, not an ideal witness. Id. at 62:7-63:11. Given Taylor's credibility issues and the important inferential link Taylor provided to connect Petitioner as "the driver," the constitutional error had a substantial and injurious effect or influence in determining the jury's verdict. Therefore, Petitioner suffered actual prejudice.

The Court will sustain Petitioner's objection regarding his Confrontation Clause claim and issue a conditional

16

writ of habeas corpus on that ground.[7] For the sake of completeness, the Court will consider Petitioner's remaining objections.

 B.   Ineffective Assistance of Counsel

Petitioner's first nine objections relate to his claims of ineffective assistance of counsel. The Sixth Amendment right to counsel includes the right to effective assistance of counsel. E.g., Strickland v. Washington, 466 U.S. 668, 686 (1984). To warrant reversal of a conviction, a prisoner must show (1) that his counsel's performance was deficient and (2)

---

[7]   Petitioner's remaining objections to Magistrate Judge Strawbridge's decision regarding alleged trial court error relating to the sufficiency of the evidence and denial of a jury instruction are overruled.

First, Petitioner argues that Taylor's drug abuse and inconsistent testimony indicate that he was convicted on insufficient evidence in violation of his right to due process because Taylor's testimony was all that placed him as the driver in the conspiracy. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The jury was informed regarding its obligation to judge the credibility of the government's witness, Taylor, and the Court will not now usurp the role of the jury in making that determination.

Second, Petitioner argues the trial court erred in failing to instruct the jury that the testimony of an admitted perjurer should be received with caution. Judge Geroff's instructions warning the jury of Taylor's credibility and instructing the jury to weigh the credibility of the Commonwealth's witnesses were sufficient. Petitioner was not entitled to the additional instruction he claims here.

that the deficient performance prejudiced his defense. See id.
at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008). The
principles governing ineffective assistance claims under the
Sixth Amendment apply in collateral proceedings attacking a
prisoner's sentence. See Strickland, 466 U.S. at 697-98.

       To prove deficient performance, a prisoner must show
that his "counsel's representation fell below an objective
standard of reasonableness." Id. at 688. The Court will consider
whether counsel's performance was reasonable under all the
circumstances. Id. Furthermore, the Court's "scrutiny of
counsel's performance must be highly deferential." Id. at 689.
That is, there is a "strong presumption that counsel's conduct
falls within the wide range of reasonable professional
assistance." Id. In raising an ineffective assistance claim, the
petitioner must first identify the acts or omissions alleged not
to be the result of "reasonable professional judgment." Id. at
690. Next, the court must determine whether those acts or
omissions fall outside of the "wide range of professionally
competent assistance." Id. at 690.

       "[T]he defendant must overcome the presumption that,
under the circumstances, the challenged action might be
considered sound trial strategy." United States v. Gray, 878
F.2d 702, 710 (3d Cir. 1989). A petitioner rebuts this
presumption by showing either that his counsel's "conduct was

not, in fact, part of a strategy or by showing that the strategy employed was unsound." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005). When the record does not disclose counsel's actual strategy the presumption is rebutted by a "showing that no sound strategy . . . could have supported the conduct." Id. at 500.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. With this standard in mind, the Court considers Petitioner's objections.

### 1.   Failure to Raise Batson Claim on Direct Appeal

First, Petitioner objects that his counsel was ineffective in failing to raise a claim under Batson v. Kentucky, 476 U.S. 79 (1986). Petitioner further objects that Judge Geroff denied his counsel an opportunity to state on the record the reasons he believed the Commonwealth's attorney exercised peremptory strikes. Petitioner misrepresents the proceedings. Indeed, Judge Geroff found that defense counsel

19

presented a prima facie case for discriminatory jury selection. The burden shifted to the prosecutor to provide race-neutral explanations, on the record, with which the trial court was satisfied. The PCRA court affirmed the finding that the prosecutor did not exercise her peremptory challenges on the basis of race based on the evidence of record. Petitioner's Batson challenge would not have succeeded, and, it follows, he did not suffer prejudice from his counsel's failure to properly present the issue on direct appeal. Therefore, the Court will overrule Petitioner's first objection.

### 2.   Failure to Investigate Alibi Defense

Second, Petitioner objects that his trial counsel was ineffective because he failed to interview Petitioner's family members and hospital personnel in connection to an alibi defense. The PCRA court rejected Petitioner's claim of ineffective assistance of counsel on this ground because Petitioner failed to provide any factual or legal support for his claim. Petitioner's counsel provided alibi evidence from other witnesses. Petitioner fails to overcome the presumption that his counsel rendered ineffective assistance. Therefore, the Court will overrule Petitioner's second objection.[8]

---

[8]     Furthermore, Petitioner is not entitled to an evidentiary hearing to develop the record on this claim because

### 3.   Failure to Challenge "Other Crimes" Evidence

Third, Petitioner objects that his counsel was
ineffective in failing to object to evidence of other crimes
relating to two porcelain dolls a bartender, Diana Coba,
purchased from co-defendants Waddy, Johnson, and Taylor at a
neighborhood bar a few days after the robbery and murders. Judge
Geroff instructed the jury to consider the evidence only against
co-defendants Waddy and Johnson. And the testimony constituted
only a fraction of evidence of what was a seven-day trial.
Petitioner alleges that the jury might have concluded that, had
counsel presented evidence of the "true origin" of the porcelain
dolls (that is, from a truck Taylor allegedly stole), Taylor
gained entry to the store by using the truck and Petitioner had
nothing to do with the conspiracy. Petitioner's bare
allegations, however, do not overcome the presumption that his
counsel provided effective assistance. Therefore, the Court will
overrule Petitioner's third objection.

### 4.   Taylor's Competency to Testify

Fourth, Petitioner objects that his counsel was
ineffective in failing to challenge more aggressively the
competency of witness and co-conspirator, James Taylor, by

---

he had such an opportunity in state court. See 28 U.S.C. §
2254(e)(2) (2006).

presenting expert testimony regarding Taylor's drug use and ability to recall certain events. Petitioner has not identified any defect in the state court's resolution of the issue, has not proffered any evidence regarding how an expert would have testified, and has not indicated how the evidence would have been admissible. Furthermore, Petitioner's counsel cross-examined Taylor extensively, along with counsel for co-defendants. Petitioner has not overcome the presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. Therefore, the Court will overrule Petitioner's fourth objection.

### 5.   Prosecution's Notes of Interview of Taylor

Fifth, Petitioner objects that his counsel was ineffective in failing to move for a mistrial or strike parts of Taylor's testimony as inconsistent with Taylor's previous statement and preliminary hearing testimony. Judge Geroff determined the prosecutor's notes from an interview with Taylor were work product, not an official statement, and, therefore, were not Brady material. Petitioner has not shown that the trial court erred in this determination. Furthermore, even if the notes were not work product, they were not material because the jury was sufficiently on notice that Taylor provided conflicting accounts and admitted to lying to authorities. There would not

have been merit to a motion to strike or for a mistrial.
Therefore, the Court will overrule Petitioner's fifth objection.

### 6.   Objection to Hearsay Testimony

Sixth, Petitioner objects that his counsel was
ineffective in failing to object to Taylor's testimony
implicating Petitioner in the conspiracy. At trial, the
prosecutor asked Taylor, "Who had introduced [Petitioner] into
the plan?" Trial Tr. vol. 3, 188:10, Oct. 25, 2001. Taylor
answered, "[Petitioner] was on the corner, that's when I had
asked who's going to be the driver, Willie [Johnson] said
[Petitioner]." Id. at 188:11-13. Petitioner's objection rests on
two grounds.

First, Petitioner contends that his counsel failed to
object to the testimony as hearsay. While Petitioner is correct
that the testimony, "Willie said [Petitioner]," is hearsay, it
is admissible hearsay under Pennsylvania law. See Pa. R. Evid.
803(25)(E) (coconspirator exception). An objection on hearsay
grounds would have been meritless. Therefore, the Court will
overrule Petitioner's sixth objection with respect to
Petitioner's hearsay argument.

Second, Petitioner contends his counsel failed to
object or strike Taylor's testimony under the Confrontation
Clause. "The Confrontation Clause prohibits the 'admission of

testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" United States v. Jimenez, 513 F.3d 62, 76 (3d Cir. 2008) (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). Although the Supreme Court did not provide a specific definition of "testimonial statements" in Crawford, this Circuit has found co-conspirators' casual statements to each other are nontestimonial when the coconspirators did not make the statements thinking they would be available for use at a later trial. See United States v. Hendricks, 395 F.3d 173, 181-82 (3d Cir. 2005) (finding "that surreptitiously monitored conversations and statements contained in [wiretap] recordings are not 'testimonial' for purposes of Crawford"). Johnson did not inform Taylor that Petitioner would be the driver with any expectation that the statement would later be used in trial or any official proceeding. In fact, the statement was a casual remark to an acquaintance. As such, the statement is nontestimonial hearsay not subject to the strictures of the Confrontation Clause. Counsel's objection would have been meritless. Therefore, the Court will overrule Petitioner's sixth objection.

### 7.   Inflammatory Testimony

Seventh, Petitioner objects that his counsel was ineffective in failing to object to testimony regarding the children one of the victims left behind. Petitioner fails to show how the trial court abused its discretion in allowing testimony to which no objection was made. Furthermore, counsel's failure to object to the testimony is within the wide range of reasonable professional assistance.[9] Therefore, the Court will overrule Petitioner's seventh objection.

### 8.   Prosecutor's Closing Argument

Eighth, Petitioner objects that his counsel was ineffective in failing to object to parts of the prosecutor's closing argument. Petitioner's objection is two-fold. First, Petitioner contends the prosecutor impermissibly expressed her opinion as to Petitioner's guilt and Taylor's credibility in her closing argument. Considering the prosecutor's remarks in context of the entire trial and closing argument, the prosecutor's remarks were a fair response to defense counsel's argument, were consistent with the evidence presented at trial, and were not expressions of her personal opinion regarding

---

[9]     Although the Court does not speculate as to the reasons counsel could have chosen not to object, the Court notes the possibility that counsel might have lost credibility with the jury by objecting to the testimony.

defense counsel's candor or Taylor's credibility. Furthermore, Judge Geroff instructed the jurors that counsel's arguments are not evidence and that their own recollections of the evidence should prevail. Therefore, the Pennsylvania Superior Court's denial of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, federal law, nor was it an unreasonable application of the facts.

Second, Petitioner contends the prosecutor impermissibly speculated as to prior testimony of Petitioner's aunt. Two of Petitioner's aunts testified as alibi witnesses concerning Petitioner's whereabouts on the morning of the robbery and murders. Petitioner has not overcome the presumption that, by not objecting to the prosecutor's speculation regarding the testimony, his counsel's performance was deficient. An objection would have had little effect given that the jurors were warned that counsel's arguments were not evidence. Furthermore, even if defense counsel's performance was deficient, Petitioner did not suffer prejudice because, if his counsel's failure to object had any prejudicial effect at all, it was cured by the trial court's instruction not to consider counsel's arguments as evidence. Therefore, the Court will overrule Petitioner's eighth objection.

9.   <u>Jury Instructions</u>

Ninth, Petitioner objects that his counsel was ineffective in failing to object to parts of Judge Geroff's jury instructions. Reviewing the jury charge as a whole, there is no question that the jury was sufficiently charged regarding the government's burden to prove Petitioner's guilt beyond a reasonable doubt. Furthermore, contrary to Petitioner's contention, Judge Geroff's reference to the juror's "unpleasant duty" did not reflect the trial court's expectation that the jury find Petitioner guilty despite insufficient evidence. Indeed, the trial court used the phrase to distinguish a reasonable doubt that arises based on the insufficiency or lack of the evidence from a doubt imagined or manufactured from a juror's effort to avoid the duty to determine whether the government proved Petitioner's guilt. Therefore, the Court will overrule Petitioner's ninth objection.

C.   <u>General Objection</u>

Eleventh, with exception to his claim regarding the sufficiency of the evidence, Petitioner generally objects to the "entire" Report and Recommendation. Pet'r's Objections 8. Although the Court has, at this point, considered the Report and Recommendation in full, Petitioner's general objection is overruled. <u>See</u> <u>Brown</u>, 649 F.3d at 195. Furthermore, Petitioner

objects that he was prejudiced by his counsel's and the trial court's errors in isolation and cumulatively. As shown above, with one exception, each of Petitioner's grounds fails.[10]

## IV.  CONCLUSION

For the reasons provided, the Court will sustain Petitioner's objection regarding his <u>Bruton</u> claim. The Court will overrule all other objections and, with respect to the overruled objections approve and adopt the Report and Recommendation. The Court will grant the Habeas Petition and issue a conditional writ of habeas corpus directing the Commonwealth of Pennsylvania either to release or retry Petitioner within 120 days.[11]

---

[10]    Throughout his Habeas Petition, supporting memorandum, and Objections to the Report and Recommendation, Petitioner asserts that he suffered a constructive denial of counsel. Although the Supreme Court has recognized limited circumstances in which the prejudice prong of the <u>Strickland</u> analysis is presumed, such as when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984), such circumstances are not present here. Indeed, throughout the proceedings, Petitioner's counsel tested the prosecution's case by cross-examining witnesses and offering alibi evidence. And counsel's closing argument casted Taylor, the government's primary witness, as untrustworthy and not credible. Therefore, to the extent Petitioner claims he was constructively denied counsel, his claim fails.

[11]    Generally, when a Commonwealth court grants an incarcerated, criminal defendant a new trial and no appeal is perfected, the new trial commences within 120 days from the date the Commonwealth court grants a new trial. <u>See</u> Pa. R. Crim. P. 600(D)(1). Thus, in exercising its discretion in setting the

period for release or retrial, the Court looks to this
established state procedural rule.